JUAN BIGAS, SUCRS., representado por VALENTINA MONFORTE, propietaria, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada; RUFINO CORDERO, obrero lesionado.

Núm. 420.—*Sometido:* Febrero 1, 1950. *Resuelto:* Abril 28, 1950.

*Fernando Zapater Martínez* y *Antonio Zapater Cajigas,* aboga-
dos de la recurrente; el obrero lesionado no compareció.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opi-
nión del tribunal.

El 9 de diciembre de 1948 el Administrador del Fondo del
Seguro del Estado resolvió que el 19 de abril de ese año el
obrero Rufino Cordero había sufrido un accidente del trabajo
mientras trabajaba para el patrono Juan Bigas, Sucrs., y que

como resultado del mismo había quedado con una incapacidad parcial permanente de un 100 por ciento de pérdida de las funciones fisiológicas de su mano derecha, por la muñeca, adjudicándole una compensación por dicha incapacidad de $1,680; determinando además el Administrador que siendo el obrero Rufino Cordero menor de 18 años de edad a la fecha del accidente, el patrono debía pagar, por compensación adicional, una suma igual a la concedida por la incapacidad, de acuerdo con las disposiciones del artículo 3 de la Ley de Compensaciones por Accidentes del Trabajo—núm. 45 de 18 de abril de 1935—según quedó enmendado, en su parte pertinente, por la Ley núm. 284, aprobada el 15 de mayo de 1945 (pág. 1037).(1)

En cumplimiento de lo dispuesto en el artículo 3 ya citado, el Administrador del Fondo del Seguro del Estado dió traslado del expediente de dicho caso a la Comisión Industrial para que ésta diera tanto al patrono como al obrero "oportunidad de ser oídos y defenderse".

Se celebró la vista ante la Comisión Industrial donde se practicó prueba testifical y documental. La contención del patrono ante la Comisión fué que el obrero, a la fecha del accidente, era mayor de 18 años y que por lo tanto no venía él obligado a pagar la compensación adicional dispuesta por la ley para aquellos casos en que un obrero sufre un acci-

---

(1) El párrafo pertinente del artículo 3 dispone:

"En caso de obreros menores de diez y ocho (18) años empleados en contravención a las leyes vigentes a la fecha del empleo, que sufrieren lesiones o enfermedades ocupacionales de acuerdo con los términos de esta Ley, la compensación que les corresponda en caso de incapacidad, o a sus beneficiarios en casos de muerte, será el doble del importe correspondiente a un obrero de diez y ocho (18) años empleado legalmente; *Disponiéndose,* que el patrono pagará la compensación adicional aquí provista, el montante de la cual constituirá un gravamen (lien) sobre toda la propiedad del patrono y se hará efectiva en la forma provista en esta Ley para el cobro de la compensación en casos de patronos no asegurados; Y *disponiéndose, también,* que el Administrador del Fondo del Estado, antes de proceder al cobro de dicha compensación adicional al patrono, dará traslado del expediente a la Comisión Industrial, para que ésta dé, tanto al patrono como al obrero, oportunidad de ser oídos y defenderse." Leyes de Puerto Rico, 1945, pág. 1057.

dente mientras trabaja para un patrono que le ha empleado en violación a la Ley sobre empleos de menores—Ley núm. 230, aprobada el 12 de mayo de 1942 ((1) pág. 1299). La Comisión confirmó la decisión del Administrador, decidiendo que el obrero, a la fecha del accidente, tenía 16 años, 11 meses, 7 días, ya que así aparecía del certificado del Registro Demográfico; y que no podía considerar la demás prueba ofrecida por el patrono para contradecir dicho certificado, ya que las únicas defensas que el patrono tenía en un caso de esta naturaleza era presentar un certificado del Departamento del Trabajo(2) autorizándole al empleo del menor, o un certificado del Registro Demográfico acreditativo de que para la fecha del accidente el obrero era mayor de 18 años. Así se expresó, en parte, la Comisión:

"La Comisión Industrial considera innecesario referirse a los múltiples pormenores contenidos en las declaraciones de estos testigos, por entender que este caso tiene que ser resuelto a base de la prueba documental. Fueron varios los documentos que se ofrecieron para probar la edad de este obrero para la fecha en que sufrió el accidente. Sólo dos de ellos coinciden en cuanto a la edad y esos documentos son, la tarjeta del Servicio Selectivo del obrero Rufino Cordero y la declaración jurada por su señora madre doña Margarita Rivera, el día 7 de junio de 1948. En ambos documentos se da como la fecha de nacimiento de este obrero la de marzo 12 de 1930. Sin embargo, en la partida de

---

(2) Aunque de los autos ante nos no aparece la forma en que ocurrió el accidente, el patrono en su alegato lo describe expresando que el obrero "introdujo la mano en un torno para preparar la masa para hacer pan. . ." Siendo ello así la prohibición en este caso al empleo del menor era total, sin que pudiera concederse permiso alguno por el Comisionado del Trabajo, pues no se trata del empleo de un menor en una *ocupación lucrativa*, según ésta se define en el artículo primero de la Ley núm. 230 de 12 de mayo de 1942, en relación con el artículo 5 de dicha ley, y sí de una ocupación que según el artículo 15 de la misma es declarada, entre otras, *peligrosa a la salud y la vida*, cuando expresa que "Ningún menor de diez y ocho (18) años será empleado ni se le permitirá ni tolerará que trabaje en ninguna de las siguientes ocupaciones, declaradas peligrosas a la salud y la vida ni en relación con ellas:

". . . . . . . .

"En maquinarias de amasar en panaderías o fábricas de hacer galletas;

". . . . . . . .

bautismo se da como la fecha del nacimiento, la de diciembre 27 de 1930, y el certificado de nacimiento expedido por el Registro Demográfico en la ciudad de Ponce en mayo 28, 1948, se da como fecha de nacimiento de Rufino Cordero, la de mayo 12 de 1931.

"En un certificado de salud, el cual tiene el núm. 30469, expedido por el Departamento de Salud en agosto 17, 1946, se hace constar que para esa fecha el obrero tenía 18 años.

"Como se ve, pues, de acuerdo con la fecha de nacimiento que se hizo figurar en el certificado de inscripción del Servicio Selectivo, y la que hizo figurar la madre del obrero en su declaración jurada, a que ya nos hemos referido, el obrero para la fecha del accidente que le ocurrió en abril 19, 1948, tenía 18 años, 1 mes y 7 días.

"Ahora bien, de acuerdo con el certificado del Registro Demográfico, el obrero tenía para la fecha del accidente 16 años, 11 meses y 7 días, y de acuerdo con la partida de la Parroquia, tenía para la fecha del accidente, 17 años, 3 meses y 22 días."

En la vista ante la Comisión declararon tanto el obrero como la madre de éste. La declaración de esta última es al efecto de que su hijo nació en marzo de 1930 y que el padre lo inscribió tardíamente en el Registro Demográfico.[3]

Para revisar la actuación de la Comisión negándose a considerar, para resolver el caso, otra prueba que no fuera la del certificado del Registro Demográfico, expedimos el auto.

 La Comisión Industrial tiene facultades, en casos como el presente, para determinar si un obrero, al sufrir un accidente, tenía o no la edad que requiere la ley, en diversas ocupaciones, para hacer su empleo legal. El artículo 3 de la Ley de Compensaciones por Accidentes del Trabajo, ya citado,[4] dispone que en estos casos ". . . el Administrador del Fondo del Estado, antes de proceder al cobro de dicha compensación adicional al patrono, *dará traslado del expediente a la Comisión Industrial, para que ésta dé, tanto al patrono*

---

[3] No obstante indicar en su resolución la Comisión Industrial que únicamente podía resolver el caso a base de la prueba documental, de los autos elevados ante este Tribunal no aparece ni el certificado del Registro Demográfico ni la partida de bautismo, a que se hace referencia en dicha resolución.

[4] Ante **Nota 1.**

*como al obrero, oportunidad de ser oídos y defenderse.*"
(Bastardillas nuestras.)

Aunque en el ejercicio de sus facultades la Comisión Industrial tiene aquellos poderes que le confiere expresamente la ley de su creación, tiene también aquéllos que son incidentales y necesarios al ejercicio de su jurisdicción y autoridad. *Caraballo* v. *Comisión Industrial*, 51 D.P.R. 161; *Cf. Atiles, Admor.* v. *Comisión Industrial*, 63 D.P.R. 924; *Johnson* v. *Mortenson*, 110 Conn. 221, 147 Atl. 705, 66 A.L.R. 1428; véase Anotación en 78 A.L.R. 1314. Es obvio, pues, que si se situó en la Comisión Industrial la facultad—y el deber—de dar tanto al patrono como al obrero "la oportunidad de ser oídos y defenderse", y la defensa del patrono es que no tiene responsabilidad de pagar la compensación adicional porque el obrero era mayor de 18 años, es la Comisión Industrial la llamada a resolver este extremo de la contienda. Al así hacerlo actúa en su capacidad cuasi judicial. La Comisión consideró que por virtud de lo dispuesto en el artículo 8 de la Ley que reglamenta el empleo de menores—Ley núm. 230 de 12 de mayo de 1942—en el que se enumera la *prueba de edad* que dicha ley exige, ella estaba impedida de considerar ninguna otra prueba que no estuviera consignada en el referido artículo 8. (⁵)

---

(⁵) El artículo 8 dispone en su parte pertinente:

"La prueba de edad exigida por esta Ley será una de las siguientes, y en el orden designado:

"(*a*) Certificación de nacimiento o transcripción certificada expedida por un encargado del Registro Demográfico u otro funcionario encargado del Registro de Nacimientos. No se cobrará ningún derecho por la certificación.

"(*b*) Fe de Bautismo o transcripción debidamente certificada de la misma, demostrativa de la fecha de nacimiento del menor y del lugar donde se celebró el bautizo. No se cobrará ningún derecho por esta certificación.

"(*c*) Pasaporte o certificación de arribo expedida por los funcionarios de inmigración de los Estados Unidos, demostrativa de la edad del menor.

"(*d*) Cualquiera otra constancia documental de la edad del menor que sea satisfactoria para el Comisionado del Trabajo; *Disponiéndose, sin embargo*, que ningún récord escolar, certificado de censo escolar, o declaración jurada o simple sobre la edad del menor hecha por uno de sus padres, su tutor o encargado será aceptada, sino de acuerdo con lo especificado en el párrafo (*e*).

Sin embargo, al examinar dicha ley seguidamente nos damos cuenta de que la naturaleza de la prueba sobre la edad y el orden de preferencia de la misma, establecidos en su artículo 8 citado, no van dirigidos a ningún tribunal de justicia, junta o comisión con funciones cuasi judiciales y sí a los funcionarios del Departamento del Trabajo a quienes se autoriza a expedir en determinados casos, certificados de empleo a niños que de otro modo, por ser menores de 16 ó 18 años, no podrían ser empleados en ocupaciones lucrativas. El artículo 7 de la propia ley exige de esos funcionarios administrativos que examinen y aprueben ciertos documentos antes de expedir el certificado o permiso de empleo a un menor, estando entre dichos documentos el de la "prueba de edad" según se enumera en el artículo 8 aludido. De suerte, pues, que la naturaleza de la prueba y el orden de preferencia de ésta, consignados en el artículo 8, son limitaciones al empleado administrativo del Departamento del Trabajo que va a expedir el permiso de empleo; pero en forma alguna es una limitación a la Comisión Industrial cuando ante ella surge la controversia de la edad de un obrero, que debe ser resuelta por la Comisión Industrial para determinar si el patrono es o no responsable de la compensación adicional que dispone la Ley de compensaciones por accidentes de obreros menores de 18 años.

---

(e) Certificación de edad aparente firmada por un médico y basada en un examen físico hecho al menor. Dicha certificación expresará la talla y peso del menor, y demás datos que sirvan de base para formar opinión sobre su edad, la declaración jurada de uno de los padres del menor, de su tutor, encargado o en cuanto a su edad, y la constancia de su edad según aparezca en el registro de la escuela a que asistió por primera vez, si puede obtenerse, o en el más antiguo censo escolar disponible, acompañarán la certificación médica sobre la edad.

"Ninguna prueba autorizada por una subdivisión posterior de la orden de prueba señalada en esta Ley será aceptada a menos que se reciba y archive prueba sustancial de que la prueba exigida en las precedentes subdivisiones no se puede conseguir. Si se presenta prueba posterior de la clase exigida en el artículo 8 de esta Ley que establezca concluyentemente la falsedad de la prueba presentada anteriormente, el Comisionado del Trabajo cancelará el certificado y expedirá o negará uno nuevo, según la edad así establecida. . . ." Leyes de Puerto Rico, 1942, pág. 1305 et seq.

No es éste un caso en que la Comisión Industrial esté rectificando un error en el Registro Demográfico.(⁶) Se trata de la determinación de un hecho necesario para resolver una contienda que ha sido llevada a dicho organismo, con facultades suficientes para resolverlo. Decidir otra cosa sería negar al patrono la oportunidad de defensa ante la Comisión Industrial que la ley le garantiza.

■ Es oportuno consignar que de acuerdo con la Ley Estableciendo el Registro Demográfico de Puerto Rico de 22 de abril de 1931 (pág. 229)—artículo 38, según fué enmendado por la Ley núm. 25, aprobada el 17 de abril de 1936 ((1) pág. 213)—"La copia del récord de cualquier nacimiento, casamiento o defunción, después que sea certificada por el Comisionado de Sanidad o por la persona autorizada por él, constituirá evidencia *prima facie* ante todas las cortes de justicia de los hechos que consten en la misma." Véanse *Pueblo* v. *Juarbe*, 37 D.P.R. 463; *Lebrón* v. *Lebrón*, 31 D.P.R. 891.

La prueba de la edad según surge del certificado del Registro Demográfico puede ser contradicha por otra prueba que pueda llevar al ánimo del juzgado la convicción de que la fecha del nacimiento de una persona es otra y no la que allí se consigna. Desde luego, dicha prueba es para ser apreciada según la credibilidad de los testigos y el valor probatorio de los documentos que se admitan.

Cometió, pues, error la Comisión Industrial al resolver que no tenía facultad para determinar la edad del obrero a la fecha del accidente, y dar consideración exclusivamente al certificado del Registro Demográfico, excluyendo prueba para contradecirlo.

---

(⁶) El artículo 31 de la Ley núm. 24 de 22 de abril de 1931, según enmendado por la núm. 117 de 12 de mayo de 1943 (pág. 345), dispone, entre otras cosas, que una vez archivados en el Departamento de Sanidad los certificados de nacimientos, casamientos o defunciones "no podrá hacerse en los mismos rectificación, adición, ni enmienda alguna que altere sustancialmente el mismo, sino en virtud de orden de una Corte de Distrito, la cual, en tal caso, será archivada en el Departamento de Sanidad haciendo referencia al certificado a que corresponda."

*Procede dejar sin efecto la resolución recurrida y devolver el caso a la Comisión Industrial para ulteriores procedimientos no inconsistentes con esta opinión.*